# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS
# EAST ST. LOUIS DIVISION

| | |
|---|---|
| HAILY DURBIN, individually and on behalf of all others similarly situated,  ) ) ) *Plaintiff*, ) ) v. ) ) CARROLS CORPORATION, ) ) *Defendant*. ) ) | Case No. Judge: Magistrate: |

## CLASS ACTION COMPLAINT

Plaintiff Hailey Durbin ("Durbin" or "Plaintiff") brings this Class Action Complaint against Defendant Carrols Corporation ("Carrols" or "Defendant") to address the irreparable harm relating to the disclosure of Plaintiff's and the putative Class members' sensitive and confidential biometric data. Plaintiff, for Plaintiff's Class Action Complaint, allege as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Carrols operates thousands of fast food restaurant franchises throughout the United States, including dozens in the state of Illinois. They operate under the popular name of Burger King.

2. When employees first begin their jobs at Carrols, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

3. While there are tremendous benefits to using biometric time clocks in the

workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking. As such, Plaintiff and the putative class faces irreparable harm due to the collection and disclosure of their confidential biometric data.

4. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5. Despite this law, Carrols disregarded its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Carrols has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

6. Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

**PARTIES**

7. Plaintiff is a natural person and citizen of the State of Illinois.

8. Defendant Carrols is a corporation operating throughout the state of Illinois.

## JURISDICTION AND VENUE

9. This Court possesses jurisdiction over putative class actions pursuant to the Class Action Fairness Act of 2005 ("CAFA") in which (A) minimal diversity exists, and (B) the amount in controversy exceeds $5 million. *See* 28 U.S.C. §§1332(d)(1)(B) (defining "class action" to include state law class actions); 1332(d)(2) (granting district courts original jurisdiction over purported class actions in which the amount in controversy exceeds $5 million and "any member of a class of plaintiffs is a citizen of a state different from any defendant").

10. Because Defendant is not a citizen of the same state as Plaintiff, there is complete diversity among the named parties. 28 U.S.C. §1332(d)(2); 28 U.S.C. §1441(b)(1).

11. Venue is appropriate in this Judicial District because the Defendant operates throughout it and the events giving rise to this case occurred in this Judicial District.

## FACTUAL BACKGROUND

**I. The Biometric Information Privacy Act.**

12. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

13. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique

biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

14. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

15. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

16. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

17. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

18. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

19. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II.     Carrols Violates the Biometric Information Privacy Act.**

20. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

21. Unfortunately, Carrols specifically failed to take note of the passage of the BIPA. Carrols continued to collect, store, and use its employees' biometric data in violation of the BIPA.

22. Specifically, when employees worked at Carrols, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

23. Carrols uses an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work.

24. Carrols failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

25. Carrols similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Carrols databases—or if they ever will be.

26. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Carrols —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Carrols disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

27. Ultimately, Carrols disregards its employees' statutorily protected privacy rights by violating the BIPA.

**FACTS SPECIFIC TO PLAINTIFF**

28. Plaintiff worked for Carrols in Illinois.

29. As an employee, Carrols required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to track time. Carrols subsequently stored Plaintiff's fingerprint data in its databases.

30. Each time Plaintiff began and ended a workday, Carrols required a scan of Plaintiff's fingerprints.

31. Carrols never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

32. Similarly, Carrols never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

33. Plaintiff never signed a written release allowing Carrols to collect or store fingerprints.

34. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Carrols violations of the BIPA alleged herein.

35. Plaintiff, now faced with irreparable harm, seeks the protection of this Court.

**CLASS ALLEGATIONS**

36. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Carrols while residing in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and

members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

37. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

   b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

   d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

   e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying

biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f) whether Defendant complies with any such written policy (if one exists); and

g) whether Defendant used Plaintiff and the Class' fingerprints to identify them.

39. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

40. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and

uniformity of decisions will be ensured.

41. **Non-Applicability of Arbitration Clause:** The Defendant has its workers sign a standard arbitration clause when they begin work. The parties in that agreement stipulate, however, that they each "reserve the right to go to court if they are faced with the risk of irreparable harm, such as the disclosure of confidential information."

42. The arbitration agreement is not applicable here because this case is precisely about the Plaintiff facing irreparable harm; indeed, the Illinois Appellate Court has held that an unauthorized disclosure of biometric creates a risk of "irreparable" harm. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 Ill.App. (1st) 180175. The Supreme Court has likewise pointed out that a violation of BIPA can constitute "irreparable" injury. *Rosenbach v. Six Flags Entertainment Corp*, 2019 Il 123186 (noting that individuals face "substantial and irreversible harm….if biometric identifiers…are not properly safeguarded"); *See also,* 740 ILCS 14/5(c)(noting that if biometric identifiers are compromised, an individual "has no recourse.").

## COUNT I – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT

43. Plaintiff incorporate the foregoing allegations as if fully set forth herein.

44. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…."

740 ILCS 14/15(b) (emphasis added).

45. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

46. Unfortunately, Carrols fails to comply with these BIPA mandates.

47. Carrols is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

48. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Carrols (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

49. Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

50. Carrols violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

51. Carrols violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

52. Carrols violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class

in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

53. Carrols violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

54. By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Carrols violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

55. On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**COUNT II – FOR INJUNCTIVE RELIEF AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/1, *ET SEQ*. – THE BIOMETRIC INFORMATION PRIVACY ACT**

53. Plaintiffs, individually and on behalf of all others similarly situated, repeat, re-allege, and incorporate all preceding paragraphs as if fully set forth herein.

54. BIPA provides for injunctive relief. 740 ILCS 14/20(4).

55. Plaintiffs and other Class members are entitled to an order requiring Defendant to make disclosures consistent with the Act and enjoining further unlawful conduct.

56. First, Plaintiffs seek an order requiring Defendant to publicly disclose a written

policy establishing any specific purpose and length of term for which Plaintiffs and other employees' biometrics have been collected, captured, stored, obtained, and/or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

57. Second, Plaintiffs seeks an order requiring Defendant to disclose whether Defendant has retained Plaintiffs' and other employees' biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

58. Third, due to the above-described facts, and Defendant's failure to make publicly available facts demonstrating BIPA compliance as BIPA requires, Defendant should be ordered to: (i) disclose if (and if, precisely how, and to whom) it has disseminated, sold, leased, traded, or otherwise profited from Plaintiffs and other fingerprint scanned employees's biometrics, which is strictly prohibited under BIPA; and (ii) disclose the standard of care that it employed to store, transmit, and protect such biometrics, as provided under BIPA. 740 ILCS 14/15(c), (d), (e).

59. Fourth, Defendant should be enjoined from further BIPA non-compliance and should be ordered to remedy any BIPA compliance deficiencies forthwith.

60. Plaintiffs' and other Class members' legal interests are adverse to Defendant's legal interests. There is a substantial controversy between Plaintiffs and Class members and Defendant warranting equitable relief so that Plaintiffs and the Class may obtain the protections that BIPA entitles them to receive.

61. Plaintiffs and the Class do not know what Defendant has done (or intends to do) with their biometrics. Absent injunctive relief, Defendant is likely to continue its BIPA

non-compliance and Plaintiffs and other Class members will continue to be in the dark on the subject.

62. For the reasons set forth above, Plaintiffs are likely to succeed on the merits of Plaintiffs' claims.

63. BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiffs are entitled to know what Defendant has done with it as set forth above, and to an affirmation and verification that it has been or will be permanently destroyed as required by 740 ILCS 14/15(a).

64. The gravity of the harm to Plaintiffs and the Class, absent equitable relief, outweighs any harm to Defendant if such relief is granted.

65. As a result, Plaintiffs requests commensurate injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate the BIPA;

C. Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys'

fees;

G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H. Awarding such other and further relief as equity and justice may require.

Dated: November 4, 2019

Respectfully submitted,

Hailey Durbin individually and on behalf of all others similarly situated,

By: *Brandon M. Wise*
Brandon M. Wise
Paul A. Lesko
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@pwcklegal.com
Email: plesko@pwcklegal.com

Mara Baltabols
mara@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
admin@fishlawfirm.com