UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| HAILY DURBIN individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CARROLS CORPORATION<br><br>*Defendant*, | Case No.: 3:19-cv-01212 |

**PLAINTIFF'S MOTION TO STAY BRIEFING ON MOTION TO COMPEL ARBITRATION PENDING RELATED NLRB ACTION AND TO ALLOW LIMITED DISCOVERY ON IRREPARABLE HARM OR ALTERNATIVELY TO MODIFY BRIEFING SCHEDULE BY AGREEMENT**

Plaintiff Hailey Durbin ("Durbin" or "Plaintiff") brings this Motion To Stay Briefing On Motion To Compel Arbitration Pending Related NLRB Action And To Allow Limited Discovery On Irreparable Harm Or Alternatively To Modify Briefing Schedule By Agreement.  In support thereof, Plaintiff states as follows:

**The Motion to Compel Arbitration Should Be Stayed for 90 Days Pending The NLRB's Consideration Of Whether To Seek Rescission of The Arbitration Agreement.**

1. Plaintiff filed her Class Action Complaint on November 4, 2019.  It seeks injunctive relief and damages under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") against Defendant Carrols Corporation ("Carrols" or "Defendant") which operates thousands of restaurants and is the largest Burger King franchisee in the world.  As detailed in the Class Action Complaint, Ms. Durbin and the putative class have been exposed to serious and irreversible privacy risks by virtue of the collection of their biometric data. (The Class Action Complaint is attached

as Exhibit A)

2. Two days after filing the Complaint, on November 6, 2019, Plaintiff also filed a complaint with the National Labor Relations Board ("Board") challenging the Defendant's Arbitration Agreement and Mandatory Arbitration Program ("Forced Arbitration Program") because it violates the National Labor Relations Act. A copy of the Charge and Docket is attached as Exhibit B.[1] Thereafter, on November 26, 2019, Defendant filed its Motion to Compel Arbitration and to Dismiss Action. [Doc. #13]

3. Recent Board cases have ordered employers to rescind arbitration agreements when the contract (like the one at issue in this case) fails to specifically inform employees that they have a right to file charges of discrimination with the Board and to not seek to enforce the arbitration agreement in court. For example, *Cedars-Sinai Medical Center*, 368 NLRB No. 83 (Sep. 30, 2019) and *Beena Beauty Holding, Inc.*, 368 NLRB No. 91 (Oct. 8, 2019) are both attached as Exhibit C.

4. Like the agreement at issue in this case, *Cedars-Sinai Medical Center*'s arbitration agreement did not specifically inform employees that they were allowed to file claims with governmental agencies such as the Board. Likewise, there, the employer filed an action to compel arbitration in court seeking to compel an employment related claim to arbitration. After finding the arbitration agreement violated the National Labor Relations Act, the Board ordered that the employer "cease and desist from…enforcing [its arbitration agreement] to preclude class or collective action by its employees". *Id.* at pp. 9-10 *Cedar-Sinai* further ordered that the employer notify the trial court "that it no longer opposes the action on the basis of the arbitration agreement" (*Id.* at p. 10) and to:

> "rescind the mandatory and binding arbitration agreements in all of its forms, or revise them in all of its forms to make clear to employees that the arbitration agreement does not

---

[1] The Charge has since been refiled in the Saint Louis as is pending as *Carrols Corporation*, 14-CA-2019.

2

restrict employees' right to file charges with the National Labor Relations Board or to access the Board's processes, or preclude employees from pursuing employment-related disputes with the Respondent on a class or collective basis in any forum. (b) Notify all current and former employees who were required to sign the arbitration agreement in any form that they have been rescinded or revised and, if revised, provide them a copy of the revised agreement." (Exhibit C, pp. 9-10)

5. In this case, the Defendant's Forced Arbitration Program falls squarely into those for which the Board has ordered recession because it purports to cover all employment claims "without limitation"; in fact, it does not have a carve out for agency filings whatsoever. (Exhibit D). Indeed, the Defendant's Forced Arbitration Program is even broader than *Cedar-Sinai* as it does not even contain an exceptions for claims that cannot be arbitrated as a matter of law.

6. The Board has already began actively investigating Ms. Durbin's Complaint, including by interviewing her. Based upon its experience Board matters, Plaintiff's counsel anticipates that the Board will either file a formal complaint against the Defendant--or elect not to issue a formal complaint--within the next 60 to 90 days.

7. As such, Plaintiff requests that Briefing on the Motion to Compel arbitration be stayed and that the Court set a status hearing approximately 90 days from now to address the status of the Board matter and, if appropriate a briefing schedule on the motion to compel.

**Plaintiff Needs Limited Discovery Relating To Irreparable Harm To Respond To The Motion To Compel Arbitration**.

8. Even if the NLRB does not seek rescission of the Forced Arbitration Program, Ms. Durbin will still seek to establish that she is permitted to proceed with her claims in Court. While the Forced Arbitration Agreement does not have the legally required carve out for Board filings, it does contain one exception: Ms. Durbin reserved "the right to go to court if… faced with the risk of irreparable harm, such as the disclosure of confidential information." (See Exhibit D at p. 2) This is precisely the issue in this case: "faced with the risk", Durbin exercised "the right to go

to court". Unlike most arbitration agreements, the irreparable harm carve out was not limited to just the employer, nor was it only limited to temporary or preliminary injunctive relief.

9. The improper maintenance of biometric information has already been found to potentially cause irreparable harm which is specifically the carve out allowed under Defendant's Forced Arbitration Program. *See, Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶ 70, 115 N.E.3d 1080, 1095, *appeal denied,* 119 N.E.3d 1034 (Ill. 2019)(noting that "disclosure can create irreparable harm"). Indeed, the Illinois General Assembly in the BIPA specifically recognized this risk when it codified BIPA's purpose:

> "Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, **the individual has no recourse**, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5 (emphasis added)

10. Recognizing that its Forced Arbitration Agreement allows its employees to go to Court if faced with irreparable harm, Defendant says there is no risk of irreparable harm because it took care of the problem by, after the lawsuit being filed, complying with its BIPA obligations by, offering to delete biometric data and enacting a BIPA policy on the Internet.

11. More significantly, the Defendant in its Motion to Compel Arbitration essentially asks that this Court trust that it has not shared the Plaintiff and putative class's biometric data with anyone and it remains safe sitting on its computers in its hundreds of Burger King restaurants. But, even Carrol's Biometric policy, which it enacted after Durbin filed this lawsuit, contradicts its own Motion to Compel. For example, in the Mento Declaration [Doc. 14, p. 64] Defendant says that biometric data is simply sitting on a server at each and every one of its restaurants' locations and is also on a NCR point of sale device. But, it also says that the biometric data is available in Syracuse, New York through a virtual private network in a data center. More troubling,

4

however is that Carrol's newly enacted BIPA policy (which it apparently enacted after this lawsuit was filed on November 11, 2010) suggests that upon termination of employment, Carrol's will delete its information from "all Company systems, files, backups, including but not limited to, its cloud storage systems". (See Doc. # 14, at Ex. 6)  It further states that if it has disclosed an employee's biometric information to its Contractors, it will instruct them to delete the information and provide a sworn affidavit that they have done so.  *Id.*

12.     After Defendant told Ms. Durbin's counsel that the biometric data was safe and secure so the case could proceed to arbitration, Ms. Durbin's counsel on November 21, 2019 sent a list of 10 questions to verify the representations.  Despite multiple requests, the Defendant has refused to answer these questions.  The questions (attached as Exhibit E) were:

1.      What did your client do with Ms. Durbin's and the Class's biometric information?   For example, what specific computers, back up systems, payroll companies, POS systems, computers, cloud servers was the data placed upon.  Describe the physical location of and identify the owner of each server, hard drive, or other location, device or medium where Plaintiff's or the Proposed Class Members' Biometric Identifiers or Information are stored or through which they are transmitted.

2.      Who are all of the people who had access to the biometric data and the devices identified above and who do they work for?

3.      What third parties does Carrol's use to provide POS, payroll, timekeeping, or other employee management services that resulted in their biometric data being captured.  Did these parties ever have access to the biometric information.

4.      Which IT companies had access to the biometric data/POS/biometric systems.

5.      Identify and describe any protocols, policies or procedures by which Biometric Identifiers or Biometric Information are destroyed.

6.      If Ms. Durbin and other proposed class members were enrolled in one restaurant, were they automatically enrolled in other locations.  If so, what was the process?

7.      For any Biometric timeclocks/POS machines that your client leased or otherwise agreed to use on a temporary basis, Identify and describe your client's procedures for decommissioning and returning the equipment at the termination of the lease or agreement, Including the handling of any Biometric Identifiers or Biometric Information stored on the Timeclocks or stored by You in a separate location or on a separate device or medium.

*8.        Identify and describe the security protocols, policies or procedures used to protect Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information from breach, disclosure to anyone.*

*9.        Your letter references that a Carrol's policy exists on the Internet.  When was it first created and please provide a copy of all drafts of it.*

*10.        Identify and Describe the manner in which You informed Plaintiff and the Proposed Class Members in writing of the purpose and length of time for which their Biometric Identifiers and Biometric Information is (or was) collected, stored or used.*

13.        It is patently unfair to allow the Defendant to make a factual representation to the Court regarding something as important as biometric data, and whether there is a risk of irreparable harm, without allowing the Plaintiff to test the veracity of these representations.

14.        Therefore, Plaintiff requests that prior to the time that she respond to the Motion To Compel, that the Defendant be ordered to answer the above questions in Interrogatory format, provide related documents, and that the Plaintiff be allowed one Fed. R. Civ. Pro. 30(b)(6) deposition on the topics identified.  This will not be a waste of resources as, even if this matter were to proceed in arbitration, this discovery would be necessary relating to the Plaintiff's underlying substantive claims, *i.e.,* to determine whether the extent of the disclosure of her biometric data.

**In The Alternative, Plaintiff Requests until January 30, 2020 to Respond To the Motion to Compel Arbitration**

15.        While the Plaintiff believes it would not be appropriate to decide the Motion to Compel until after the Board decides what it is doing, and until after it obtains discovery, Defendant's counsel has indicated he does not oppose an extension by Plaintiff to respond to the pending Motion to Compel if other filings are also stayed.   Plaintiff's counsel, who is primarily responsible for handling the respond, is scheduled to be in Israel for his youngest son's Bar Mitzvah from December 21, 2019 through early January, 2020 and therefore requested additional time to respond to the Motion to Compel.

Wherefore, the Plaintiff requests that this Court: (a) stay for 90 days the response to the Motion to Compel Arbitration pending the Board's decision on Plaintiff's complaint, (b) that during this time period, the parties conduct limited discovery to ascertain what has happened to the Plaintiff and putative class's biometric data. Alternatively, Plaintiff requests that she be allowed until January 30, 2020 to respond to the pending Motion to Compel Arbitration.

Dated: December 9, 2019    Respectfully submitted,

Haily Durbin individually and on behalf of all others similarly situated,

By: */s/ Brandon M. Wise*
Brandon M. Wise
Paul A. Lesko
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@pwcklegal.com
Email: plesko@pwcklegal.com

Mara Baltabols
mara@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
admin@fishlawfirm.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM-ECF efiling system. Said system will provide notice and allow access to all counsel of record.

*/s/ Brandon M. Wise*