IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAILEY DURBIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARROLS CORPORATION,<br><br>Defendant. | Case No. 3:19-CV-1212-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Stay Briefing on Defendant's Motion to Compel Arbitration and to Allow Limited Discovery filed by Plaintiff Hailey Durbin (Durbin) (Doc. 17). For the reasons set forth below, the Court denies the motion.

### FACTUAL & PROCEDURAL BACKGROUND

This action arises out of Durbin's employment with Defendant Carrols Corporation ("Carrols"), an operator of numerous Burger King franchises (Doc. 1 at 1). Specifically, Durbin argues that Carrols's collection of her fingerprints and the fingerprints of other employees of Carrols was a violation of employees' rights under the Illinois Biometric Information Privacy Act ("BIPA") (*Id.*).

Durbin was an employee of Carrols in Illinois (Doc. 1 at 7). Durbin alleges that as part of her employment, her fingerprints were scanned by Carrols and stored in at least one database maintained by Carrols (*Id.*). Durbin further alleges that she was required to scan her fingerprints at the beginning and end of each workday (*Id.*). As a condition of

her employment, Durbin also executed the Agreement for Resolution of Disputes Pursuant to Binding Arbitration Between Carrols Corporation and Hailey N. Durbin ("Arbitration Agreement") (Doc. 17, Ex. D). This agreement specifies that all disputes arising out of Durbin's employment with Carrols will be resolved through arbitration under current rules set by JAMS, a national arbitration association (*Id.* at 2). The few exceptions listed in the Arbitration Agreement include the caveat that "the parties reserve the right to go to court if they are faced with the risk of irreparable harm, such as the disclosure of confidential information" (*Id.*).

In 2008, Illinois enacted BIPA, with the Illinois General Assembly finding that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILL. COMP. STAT. 14/5. BIPA requires that private entities seeking to collect individual biometric information must first obtain the written informed consent of the subject. 740 ILL. COMP. STAT. 14/15. Since the passage of BIPA, decisions of certain courts interpreting BIPA have found that some violations of the statute may raise the risk of irreparable harm, while other "bare procedural violations" may not raise any risk of material harm. *Compare Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E.3d 1080, 1095 (Ill. App. Ct. 2018) (finding that "disclosure [of biometric information] can create irreparable harm."), *with Rivera v. Google, Inc.*, 366 F. Supp. 3d 988, 1004–05 (N.D. Ill. 2018) (finding that bare procedural violation of BIPA did not satisfy Article III concreteness requirement for standing).

On November 4, 2019, Durbin filed this suit, alleging that Carrols's practices violated BIPA and violated the rights of Durbin and a class of Carrols's employees to privacy in their biometric information as set forth in BIPA (Doc. 1 at 2). Two days later, on November 6, 2019, Durbin also filed a complaint with the National Labor Relations Board ("NLRB Complaint") challenging the Arbitration Agreement on the grounds that it did not note that employees retained the right to bring complaints before the NLRB arising out of alleged violations of the National Labor Relations Act ("NLRB") (Doc. 17, Ex. B). On November 21, 2019, Carrols's counsel wrote to Durbin offering to delete the biometric information retained by Carrols (Doc. 22, Ex. 2). Durbin's counsel responded on the same day with a list of questions that it stated were necessary to assess counsel's offer to delete Durbin's biometric information (Doc. 22, Ex. 3). To date, Carrols still retains Durbin's biometric information (Doc. 22, pg. 12-13).

On November 26, 2019, Carrols filed a Motion to Compel Arbitration and Dismiss Action pursuant to the Arbitration Agreement signed by the parties ("Motion to Compel") (Doc. 13). On December 9, 2019, Durbin filed the instant motion, requesting (1) an extension of time until January 30, 2020, to respond; (2) a 90-day stay of Durbin's response pending decision on the NLRB Complaint; and (3) limited discovery in the form of specific interrogatories from the Carrols related to the storage and transmission of her biometric data (Doc. 17). Because Carrols did not oppose the extension of time, the Court granted the extension until January 30, 2020, and reserved ruling on issues (2) and (3) (Doc. 18).

## ANALYSIS

I. **Durbin's Request for Limited Discovery**

   A. **Applicable Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, governs the interpretation of arbitration agreements in federal courts. The Supreme Court has explained that "the overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). In light of this purpose, courts have consistently interpreted the FAA as establishing a federal policy favoring the broad validity and enforceability or arbitration agreements. *E.g.*, *Id.* at 346; *Kiefer Specialty Flooring v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) ("[S]trong support for the federal policy favoring arbitration exists.").

Sections 3 and 4 of the FAA describe procedures through which federal courts implement arbitration agreements, stating that courts "shall" stay proceedings and order arbitration upon confirming the existence of an enforceable arbitration agreement that covers the dispute at hand. In determining whether parties formed an agreement to arbitrate and agreed to arbitrate particular issues, courts generally should apply ordinary state-law principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In practice, however, courts have held repeatedly that even threshold issues such as the arbitrability of the dispute may be subject to the arbitration if the language of a broadly-worded agreement specifically includes arbitrability and jurisdiction among the subjects delegated to the arbiter. In assessing whether parties have

agreed to delegate the issue of arbitrability to an arbitrator, however, courts should not assume delegation unless there is "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability. *Id.* Nevertheless, if the issue of arbitrability itself is not arbitrable, any doubts concerning the scope of arbitrable issues should be resolved by the court in favor of arbitration, and a district court cannot deny a request to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kiefer Specialty Flooring*, 174 F.3d at 909.

Courts have not fully clarified the extent of discovery that may be permissible in order to assess arbitrability. *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 n.1 (7th Cir. 2012) (declining to review the scope of a discovery order issued by district court before ruling on a motion to compel arbitration). However, any such discovery would have to comply with the provisions of the FAA requiring that decisions regarding the existence of applicable arbitration agreements be conducted "summarily," as well as "the unmistakably clear congressional purpose that the arbitration procedure . . . be speedy and not subject to delay and obstruction." *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978). To allow extensive discovery prior to obtaining a ruling on arbitration would defeat the purpose of arbitration agreements and go against the broad, pro-arbitration policy of the FAA.

### B. Discussion

In the Motion, Durbin argues that Carrols should be ordered to answer interrogatories prior to the time that she responds to the Motion to Compel. Durbin cites

case law indicating that violations of BIPA relating to biometric data may create a risk of irreparable harm. While noting that Carrols has indicated the existence of BIPA policy and offered to delete Durbin's biometric data, Durbin argues that she may be at risk of irreparable harm which would remove her dispute from the scope of the arbitration agreement. To determine whether the dispute is in fact arbitrable, Durbin states that further information regarding Carrols's storage and management of biometric data is required to assess the potential for irreparable harm.

This presents the Court with an issue of arbitrability under the Arbitration Agreement—the Court must determine first whether the issue of arbitrability is itself subject to arbitration under the terms of the agreement, in which case this court should not consider it further. If arbitrability is not a subject of arbitration, the Court must assess whether there is no interpretation of the Arbitration Agreement that could be said to cover the dispute between the parties, and whether the limited discovery requested by Durbin would aid in this assessment or would merely delay and inhibit the arbitration procedure agreed upon by the parties in the Arbitration Agreement.

Carrols notes that the JAMS rules for arbitration are specifically mentioned in the Arbitration Agreement, which states that arbitration shall be conducted under "the then current JAMS rules" and that "[the employee] has been told that JAMS' rules for arbitration . . . are available at www.jamsadr.com or upon request from a manager[.]" (Doc. 22, Ex. 1, p. 19). Based on this language, Carrols argues that the JAMS rules, including JAMS Rule 11(b) granting the arbitrator authority to rule on issues of arbitrability, are incorporated by reference. A number of courts have in the past

considered the issue of whether incorporation by reference is sufficient to delegate arbitrability to an arbitrator. *E.g.*, *Preston v. Ferrer*, 552 U.S. 346, 357 (2008) (indicating that arbitration rules may generally be incorporated by reference); *Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 14 (1st Cir. 2009) (finding reference to arbitration rules met "clear and unmistakable evidence" test to delegate arbitrability, but reserving other jurisdictional issues for the court). Overall, existing case law seems to favor a finding that incorporation of arbitration rules by reference provides clear and unmistakable evidence of an intent to delegate the threshold question of arbitrability to the arbitrator. Under this interpretation of the Arbitration Agreement, it would be improper for this court to allow further discovery into the issue, which the parties agreed to reserve for decision by an arbitrator.

Even if the reference to JAMS rules were not sufficient to delegate the issue of arbitrability to the arbitrator, the Court still could not justify ordering the limited discovery requested by Durbin. The Court cannot deny a request to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kiefer Specialty Flooring*, 174 F.3d at 909. Here, the Arbitration Agreement preserves the right to go to court "if parties are faced with the risk of irreparable harm[.]" (Doc 22, Ex. 1, p. 19). Courts have ruled, however, that violations of BIPA in many cases may not give rise to injuries that are material, and Durbin has alleged only procedural violations of BIPA without specific, individualized harm to herself or any other members of the proposed class. Durbin's questions for Carrols deal solely with the scope and procedures for data retention, not with any harm

to Durbin or the proposed class beyond the procedural violations of BIPA alleged in the complaint. These questions do not appear capable of eliciting further proof of any harm to Durbin that might so clearly rise to the level of irreparable harm as to leave the Arbitration Agreement incapable of interpretation in a manner that would cover this dispute. Further, the possibility of any future irreparable harm is mitigated by the fact that Carrols has already offered to delete Durbin's biometric information, thus removing the necessity of the equitable relief that the Arbitration Agreement appears to contemplate. Durbin's request for limited discovery is denied.

## II.   Durbin's Request for a Stay Pending Decision on the NLRB Complaint

### A. Applicable Law

A district court has inherent power to exercise discretion to stay proceedings. *Landis v. North American Co.*, 299 U.S. 248, 255 (1936); *Texas Independent Producers and Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005). In exercising this power, the Court must weigh competing interests and consider the economy of time and effort for itself, counsel, and litigants. *Landis*, 299 U.S. at 255. In considering whether to stay arbitration, however, the Court must not allow discretionary considerations to frustrate the strong federal policy in favor of arbitration. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir. 1981) (citing *C. Itoh. & Co. v. Jordan International Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977)). Courts have held that where disputes involve both arbitrable and non-arbitrable claims, the FAA requires district courts to compel arbitration of pendent arbitrable claims "even where the result would be the possibly inefficient maintenance of

separate proceedings in different forums." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *Dickinson*, 661 F.2d at 646.

### B. Discussion

Here, Carrols argues that the claims in Durbin's NLRB Complaint are in fact arbitrable. But even if this were not the case, precedent clearly shows that the pendency of a separate non-arbitrable issue in a different forum is not sufficient reason to stay arbitration over arbitrable claims. Furthermore, even if this court were to consider matters of efficiency in debating whether or not to stay arbitration, it does not appear that a three-month stay would be beneficial for economy of time and effort. The challenges to the Arbitration Agreement in the NLRB Complaint relate to that agreement's silence on employees' rights to bring claims before the NLRB alleging violations of the NLRA. The claim brought by Durbin in this forum arises under BIPA, not the NLRA, and even if the NLRB were to rule in favor of Durbin, the NLRB precedents cited by Durbin indicate that the likely outcome would be mere revision of the Arbitration Agreement to specifically mention the right to bring claims before the NLRB. *Cedars-Sinai Medical Center*, 368 NLRB No. 83 at 3 (Sept. 30, 2019) (ordering the employer to "rescind . . . *or revise* [the arbitration agreement")) (emphasis added); *Beena Beauty Holding, Inc.*, 368 NLRB No. 91 (Oct. 8, 2019) (ordering the employer to "rescind [the arbitration agreement] *or revise it*") (emphasis added). This would not affect the arbitrability of the issue before this court, and there is no indication that the NLRB will make such a ruling within the three-month window sought by Durbin in her request for a stay. Durbin's request for a stay is denied.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Stay Briefing on Carrols's Motion to Compel Arbitration and to Allow Limited Discovery (Doc. 17) filed by Durbin. Durbin shall respond to Carrols's Motion to Compel by the end of the extension of time on **January 30, 2020**.

**IT IS SO ORDERED.**

**DATED:** January 13, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**